UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-MJ-08296-JMH

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

GARY LEE JONES,

        Defendant.
_____/

## MOTION REQUESTING CONDITIONS OF RELEASE

COMES NOW the undersigned counsel, who has filed a Temporary Notice of Appearance in the above-referenced cause for purposes of bond and detention, and would respectfully request this Honorable Court enter an Order setting conditions of release for this Defendant. In support thereof, the undersigned would show as follows:

1. The Defendant was originally arrested on a criminal complaint alleging a violation of 18 U.S.C. § 922(g)(1), alleging a Felon in Possession of a Firearm. This is an offense punishable by ten years.

2. The undersigned counsel has been in discussions with Assistant United States Attorney, Marc Osborne, to see if the parties could agree on conditions of release.

3. The undersigned counsel was called into trial in State Court on August 11, 2014, in a case captioned State of Florida vs. Vantavia Jackson-Johnson, Case No. 2011CF001490CXX, before The Honorable Karen Miller. That trial is anticipated to last throughout the week.

4. **A detention hearing in this matter is scheduled for August 13, 2014, at 10:00 A.M. The undersigned counsel's partner, Jack K. Fuchs, will be present to handle this hearing.**

5. In conversations with the Government, Mr. Osborne has discussed the possibility of filing additional charges against this Defendant. These charges would likely be no different than the charges filed against Co-Defendant, Anthony Carbone, who has already been released pursuant to an agreement between the parties.

6. The Defendant is asking that he be released based upon the following:

- The Defendant is 59 years old.

- The Defendant suffers from nerve damage as a result of a prior accident, and is also in the midst of dental work involving the nerves in his mouth. He had been seeing a dentist prior to his arrest and at times is in extreme pain. The undersigned counsel has contacted the Palm Beach County Jail on two occasions to make sure the Defendant does see a physician.

- The Defendant's brother, Timothy Jones, had been in a previous bad accident and suffers from Post Traumatic Stress Disorder. This accident happened in the State of Connecticut and the Defendant's brother moved to South Florida in order to be closer to the Defendant and the support he has provided to him.

- Attached and incorporated by reference hereto as Exhibit A is a letter from the attorney who represented the Defendant's brother in Connecticut and explained the circumstances regarding the Defendant's brother's illness, his move to Florida, and the fact that his brother, the Defendant, has been caring for him.

- This letter also outlines the settlement of the case and indicates to the Court that any funds or property that may be used to secure the Defendant's release are funds which would pass a Nebbia requirement.

2

- Attached and incorporated by reference hereto as <u>Composite</u> <u>Exhibit</u> <u>B</u> are all the medical records from the Defendant's brother's treatment, which give the Court an idea of the difficulties and trouble that he has been going through.

7. The Defendant's brother purchased a home in South Florida in Broward County which is worth approximately $126,000.00. That home was paid for from the funds of the settlement, and is free and clear. The Defendant's brother indicated that he would willing to put this home up to secure his brother's release.

8. The Defendant's prior felony involvement with the law appears to have occurred well over 15 years ago.

9. The Defendant had some misdemeanor matters in Broward County which have all been resolved. One of the cases involved is a suspended driver's license for which the Defendant had to do eight days in the County Jail for which he did and reported by self-surrender.

10. The Government and the undersigned counsel discussed a matter that involved a Co-Defendant in this case who has since been detained. That matter dealt with a Co-Defendant making overtures about hurting someone. Both the Government and the undersigned counsel have discussed that this Defendant had nothing to do with that, and there is no indication that this Defendant even knew about that.

11. The Defendant has been in the Palm Beach County Jail awaiting his detention hearing since July 29, 2014.

12. The undersigned counsel is proposing the following:

    a. That the Defendant be released on a personal surety.

    b. That that personal surety be secured by the Defendant's brother's home.

      c.    That the Defendant adhere to any curfew this Court thinks is necessary.

      d.    That the Defendant continue to live at the residence he was living at with his brother so that he can take care of his brother.

      e.    That any curfew bear in mind the fact that the Defendant has to deal with all of his brother's needs.

    13.    The Defendant is neither a flight risk nor danger, and certainly will appear in Court as necessary. It is the Defendant's intention to hire the undersigned counsel on a permanent basis, but those matters are all on hold pending a resolution of this matter and the Defendant's release.

WHEREFORE, the Defendant would respectfully request this Honorable Court enter an Order releasing the Defendant on conditions as suggested above.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished, by electronic transmission via CM/ECF, to MARC OSBORNE, Assistant United States Attorney, Office of the United States Attorney, 500 South Australian Avenue, West Palm Beach, Florida 33401, this 11th day of August, 2014

        Respectfully submitted,

        LAW OFFICES OF SALNICK, FUCHS & BERTISCH, P.A.
        One Clearlake Centre, Suite 1203
        250 South Australian Avenue
        West Palm Beach, Florida 33401-5014
        Telephone: (561) 471-1000
        Facsimile: (561) 659-0793


        /s/ Michael Salnick
        MICHAEL SALNICK, Fla. Bar #270962

Attachments

4

**Exhibit A**

# D'AGOSTO & HOWE, LLC
## ATTORNEYS AT LAW
One Cots Street
Shelton, CT 06484
(203) 712-0210
Fax: (203) 922-9911
dhctlaw.com

Nicholas A. D'Agosto IV
ndagosto@dhctlaw.com

Steven G. Howe
showe@dhctlaw.com

August 5, 2014
Sent via facsimile: (954) 943-1309

RE: **Timothy Jones v. Sil/Carr Corporation**
Date of Injury: 7/15/2010
WCC File No.: 500151298

To whom it may concern:

Please be advised that our firm represented Mr. Timothy Jones in connection with the above Connecticut workers' compensation claim. We write this letter at Mr. Jones's request to detail the circumstances surrounding the above claim.

Mr. Jones sustained serious, work-related physical injuries that resulted in a diagnosis of post-traumatic stress disorder (PTSD). Due to his injuries, Mr. Jones suffered a severe disability that necessitated a relocation to Florida in order to be closer to the support structure provided by his brother, Gary. Mr. Jones has relied heavily on his brother since the move.

Mr. Jones's workers' compensation claim was settled in December 2013 for the total amount of $440,000.00. After fees and costs were deducted from the gross settlement amount, Mr. Jones received net settlement proceeds of $352,554.05. Our firm disbursed those proceeds directly to Mr. Jones by way of checks dated December 30, 2013.

Should you require additional information regarding this matter, please feel free to contact the undersigned at your request.

Very truly yours,

Steven G. Howe

SGH/cmb
cc: Timothy Jones

**Composite Exhibit B**

# The Waynik Group

52 Beach Road, Fairfield, CT 06824
Phone 203 254-2000   Fax 203 255-3126

160 Hawley Lane, Trumbull, CT 06611
Phone 203 386-0096   Fax 203 380-5615

Mark Waynik, MD
Owen Schneider, MD
Gale Levin, MD
Jay Berkowitz, MD
Howard Weiner, MD
Sarah Aderholt, MD
Gayle Hoffman, LCSW, BCD
Robyn Hoffman, LCSW
Marsha Magun, LPC
Elaine Bluestein, LCSW
Justin Barsanti, LCSW

Attorney Seven G. Howe
One Cots Street
Shelton, CT  06484

RE: Timothy Jones

June 25, 2013

Dear Attorney Howe,

Timothy Jones continues under the psychiatric care or the undersigned for treatment of a Post Traumatic Stress Disorder. He remains totally disabled from gainful employment due to this condition. Due to the now chronic nature of his illness, the prognosis for further recovery is guarded. It is my medical opinion that this disability is now permanent.

Sincerely,

Mark Waynik, M.D.

11/05/2013 14:10    2037. 320              PAIN & SPINE D. LEVI                    PAGE 02/07

# Pain and Spine Specialists of Connecticut, LLC

**David C. Levi, MD**
Allison DeNicola, APRN, BC

Beth Andersen, PA-C
James McMahon, PA-C

**PATIENT NAME:** TIMOTHY JONES

**DATE OF BIRTH:** 08/17/1957

**ACCOUNT #:** 1389

**DATE OF SERVICE:** 07/30/2013

**PHYSICIAN:** David C. Levi, M.D.

**PAIN LEVEL:** 8/10.

**CHIEF COMPLAINT:** Right foot pain.

**CURRENT MEDICATIONS:** Methadone, Dilaudid p.r.n., Cymbalta, Neurontin, clonazepam, and Seroquel.

**ALLERGIES:** No known drug allergies.

**HISTORY OF PRESENT ILLNESS:** Mr. Jones is a 55-year-old gentleman who was injured through Workers' Compensation while working causing partial amputation of his right foot and multiple revisions for chronic right foot issues with associated issues of chronic neuropathic pain. The patient has a history of substance abuse issues in the past. He is managed at a methadone clinic for the persistence of pain in his foot. He has had recent surgery approximately a little greater than two months ago; at which time, they did a resection, skin graft and a tendon transfer. Unfortunately, since that time, he has had worsening symptoms. The graft appears to be actually doing quite well, although there is one area that he is concerned about with some mild skin changes. Otherwise, he is getting a lot of pain in the dorsum of the foot and then in the Achilles area. He wears a special shoe on a daily basis. He continues to have pain, which is worse in the evening. He takes methadone during the day and has been successful in decreasing his methadone use over the last six months. Unfortunately, he continues to have a significant amount of discomfort and difficulty sleeping secondary to what appears to be neuropathic pain. He and I have discussed utilizing neuropathic agents at night in the past. He notes that these do not help him and he had asked for a small prescription of a pain medication to be taken. We had discussed the risks and benefits of this given his history, but he felt as though he was in control with methadone and going on a daily basis to see a counseling and that he continues to utilize just the pain medication at night, which is working well for him. He is seen back today, at which time, he notes that he does not feel that he should be on a narcotic medication in the evening and that he would like to consider the option, which I discussed with him previously, which was to consider a neuropathic agent.

**PAST MEDICAL HISTORY:** History of chemical dependence, PTSD.

203-743-7246       fax 203-792-3920
67 Sandpit Road, Suite 308, Danbury, CT 06810
1579 Straits Turnpike, Middlebury, CT 06762
131 Kent Road, Building A, New Milford, CT 06776

PATIENT NAME: TIMOTHY JONES
DATE OF SERVICE: 07/30/2013
Page 2

**SOCIAL HISTORY:** Negative for tobacco. Negative for ETOH. Positive for caffeine.

**WORK STATUS:** He is totally permanently disabled with regards to his Workers' Compensation injury.

**REVIEW OF SYSTEMS:** Positive for PTSD, psychiatric care, otherwise, negative per the Pain and Spine Specialists review of systems.

### PHYSICAL EXAMINATION:
VITAL SIGNS: Blood pressure 12/80, pulse 80, respirations 16, height 6 feet 2 inches, and weight 190 pounds.
GENERAL APPEARANCE: The patient is well groomed, cooperative, well nourished and appropriate affect.
CHEST: Clear to auscultation.
COR: Regular rate and rhythm.
LOWER EXTREMITIES: Examination of the right foot shows a small area on the medial instep with some slight skin breakdown. It is approximately 1 mm in size. There appears to be slight abrasion, but there is no full thickness skin breakdown noted. It is a very, very small amount. He notes his physical is aware of this. Otherwise, there are no changes.

### DIAGNOSES:
1. Chronic right lower extremity symptoms.
2. Complex regional pain syndrome, right lower extremity.
3. Status post partial amputation, right foot.

### TREATMENT PLAN:
1. Mr. Jones is seen back today for reevaluation in regards to his right lower extremity and foot pain. He and I did discuss at length the issues regarding his foot today. I am happy to take this opportunity to get him off of all opioid medication. It certainly concerns me the fact that although he is a very pleasant and nice man, I do not like the idea given his history of utilizing narcotic medication. Therefore, our goal would be to maximize neuropathic agents and to this end I am increasing his gabapentin with the goal of having him up to 1800 mg per day as his symptoms which were predominantly in the evening when I had seen him originally have now persisted since surgery and did not worse as well during the day. Therefore, we are going to stop his Dilaudid at this time and maximize his Neurontin and increasing this up to 1800 mg a day over the next month. I have given prescriptions for this. He will be seen back at that time.
2. He remains at a totally permanently disabled status.

David C. Levi, M.D.

DCL/ss      00026818

cc: Workers' Compensation

# Pain and Spine Specialists of Connecticut, LLC

**David C. Levi, MD**
Allison DeNicola, APRN, BC

Beth Andersen, PA-C
James McMahon, PA-C

**PATIENT NAME:** TIMOTHY JONES

**DATE OF BIRTH:** 08/17/1957

**ACCOUNT #:** 1389

**DATE OF SERVICE:** 07/02/2013

**PHYSICIAN:** David C. Levi, M.D.

**PAIN LEVEL:** 6/10.

**CHIEF COMPLAINT:** Right foot pain.

**CURRENT MEDICATIONS:** Methadone, Dilaudid, Cymbalta, Neurontin, clonazepam and Seroquel.

**HISTORY OF PRESENT ILLNESS:** Mr. Jones is a very pleasant 55-year-old gentleman status post multiple right foot and ankle surgeries with a fused right foot. He is status post revision of his calcaneus and he is here today for re-evaluation for management of pain. He is essentially managed during the day with the use of methadone, which he has been on for number of years. He is slowly been weaning this is and is now down from 150 mg per day to 110 mg per day. He gets this through a clinic. I have been asked to help him manage his pain at night, which appears to be the worse of it. He has been using Dilaudid 4 mg one tablet at night to help him with the pain. He notes with the decrease in the methadone he has had more daily pain, which has been unusual for him at the same time he has been going to physical therapy twice a week and doing home exercises. He has an ankle fusion and has very little eversion of the foot, but there is still some left. There is no inversion and dorsiflexion and plantar flexion is really what he is working on in therapy. The area now is well healed. He notes that the pain medication at night does help him. He notes that his sleep is somewhat broken up not because of pain at this point as he notes the Dilaudid helps him because of his PTSD issues.

**PAST MEDICAL HISTORY:** History of chemical dependency, PTSD and psychiatric care.

**FAMILY HISTORY:** Noncontributory.

**SOCIAL HISTORY:** Negative for tobacco. Negative for ETOH. Positive for caffeine.

**REVIEW OF SYSTEMS:** Positive for sleep disturbance, PTSD and weight loss.

**ALLERGIES:** No known drug allergies.

203-743-7246      fax 203-792-3920
67 Sandpit Road, Suite 308, Danbury, CT 06810
1579 Straits Turnpike, Middlebury, CT 06762
131 Kent Road, Building A, New Milford, CT 06776

PATIENT NAME: TIMOTHY JONES
DATE OF SERVICE: 07/02/2013
Page 2

**PHYSICAL EXAMINATION:**
VITAL SIGNS: Blood pressure 118/72, pulse 64, respirations 16, height 6 feet 2 inches and weight 187.8 pounds.
LOWER EXTREMITIES: Motor is 5/5 with regards to plantar flexion and dorsiflexion in the bilateral lower extremities. There is approximately 20% eversion of the right foot. There is zero inversion of the right foot. Plantar flexion, dorsiflexion, range of motion is approximately 30% of normal. Reflexes are 1/5 bilateral knee, absent right ankle, 1/5 left ankle. No clonus. Negative Babinski. He currently has a protective covering over his right foot, which is a support brace to just above the ankle.

**DIAGNOSES:**
1. Chronic right lower extremity neuropathic pain which is opioid responsive.
2. Status post right foot transmetatarsal amputation.
3. Status post right ankle fusion.
4. History of chemical dependency.
5. Chronic pain syndrome.
6. PTSD.

**TREATMENT PLAN:** Mr. Jones was seen back today for re-evaluation regarding his chronic back pain. He did undergo urine toxicology screen on May 10, 2013 this was reviewed today. It is positive for methadone and opioids, which is consistent with the use of his current medication. He notes that the Dilaudid is helping him to sleep at night. The risks and benefits of taking this medication were discussed with Mr. Jones including the risk of addiction, dependence, depression and lowering his testosterone level. He is currently taking one Dilaudid tablet at night. He notes that it is helping him with sleep the majority of the time with regards to pain. With regards to his PTSD, this obviously does not have an effect and this at times some of the reason why he is kept up at night. He notes that he is coming down on his methadone on his own, which is also causing some increased daily pain. He notes no side effects currently from the Dilaudid. This will be renewed today. He will follow up in four weeks and he continues in physical therapy twice a week with home exercise for dorsiflexion and plantar flexion full range of motion in the right foot.

David C. Levi, M.D.

DCL/sv         00026494

cc: Workmen's Compensation

Patient:      109074 - Timothy Jones
DOB:          08/17/1957

Date:         09/20/2013 09:15
Provider:     Kabbash, Christina MD, PHD, MPH
Encounter:    Work Comp Post Op

## ACTIVE PROBLEMS
- Chronic Cutaneous Ulcer Decubitus
- Chronic Cutaneous Ulcer Decubitus Stage II - right foot over medial 1st MT; two areas about 3mm each in size
- Complications Due To Unspecified Device, Implant, Or Graft
- Lower Limb Amputation At Foot - -RT
- Osteoarthritis Localized Ankle / Foot
- Reported Family History of Cancer
- Superficial Injury - Abrasion of the Foot
- Synovitis Ankle Right - with soft tissue impingement lateral gutter
- Traumatic Arthritis Ankle Left

## CHIEF COMPLAINT
The Chief Complaint is: Rt heel pain.

## REASON FOR VISIT
Postoperative exam 3 week postop - debridement osteophytes RIGHT foot - ambulating in a heel wedge postop shoe with a cane. Removal of sutures no complications Right foot. Doing well - no pain. Date of surgery: 8/27/2013.

## ALLERGIES
- Neurontin (Gabapentin)    Reaction: swollen, psychological
- Robaxin (Methocarbamol)   Reaction: swollen, psychological

## PHYSICAL FINDINGS
General Appearance:
  ° Oriented to time, place, and person.  ° Well developed.  ° In no acute distress.
Musculoskeletal System:
  Ankle:
    General/bilateral: ° No swelling of the ankles.
  Foot:
    General/bilateral: ° No swelling of the feet.
Neurological:
  Sensation: ° No sensory exam abnormalities were noted.
Skin:
  Injury / Incision Site:  • Tissue surrounding the incision was tender.  • A scar clean dry and
    intact with eschar.
No erythema no drainage. Nylon sutures removed without diffficulty.

## ASSESSMENT

Patient: 109074 - Timothy Jones
DOB: 08/17/1957

Date: 09/20/2013 09:15
Provider: Kabbash, Christina MD, PHD, MPH
Encounter: Work Comp Post Op

- Decubitus ulcer foot due to osteophytes

## PLAN
- Follow-up for re-examination three weeks

3wk fu
light dry clean dressing
flat postop shoe
PT 1x/week
no changes in work status.

## NOTES
The above evaluation was performed by me at _and the evaluation and time performing such was in compliance with the guidelines established by the Industrial Medical Council. The history, examination, review of records, review of diagnostic studies, and composition of the report were performed entirely by me.~I declare under penalty of perjury that the information contained in this report and its attachments, if any, is true and correct to the best of my knowledge and belief, except as to information that I have received from others. As to that information, I declare under penalty of perjury that the information accurately describes the information provided to me and, except as noted herein, that I believe it to be true.~In accordance with Labor Code 5703 (a) (1) (effective July 16, 1993), there has not been a violation of Labor Code 139.3, and the content of the report are true and correct to the best of my knowledge. This statement is made under penalty of perjury.

## PROVIDER LIST
Jonathan MD Kost                              Pain Management

## MEANINGFUL USE
Clinical summary provided to patient.

Christina Kabbash MD, PHD, MPH
Electronically signed by: Christina Kabbash, M.D.   Date: 09/20/2013 09:21

Electronically approved by: Christina Kabbash, M.D.   Date: 09/20/13 09:21

## CONNECTICUT SURGERY CENTER
an affiliate of SCA

### OPERATIVE REPORT

| | |
|---|---|
| PATIENT NAME: JONES, TIMOTHY | MEDICAL RECORD #: 76514 |
| PHYSICIAN: CHRISTINA KABBASH, M.D. | DATE OF SURGERY: 08/27/2013 |

| | |
|---|---|
| PREOPERATIVE DIAGNOSES: | Right painful osteophytes with overlying skin chronic ulcers. |
| POSTOPERATIVE DIAGNOSES: | Right painful osteophytes with overlying skin chronic ulcers. |
| PROCEDURE PERFORMED: | Debridement osteophytes, first metatarsal dorsolateral aspect. |
| ANESTHESIA: | General with 10 cc of local. |
| ESTIMATED BLOOD LOSS: | 1 cc. |
| TOURNIQUET TIME: | 15 minutes ankle Esmarch. |
| ANTIBIOTICS: | 2 g of Ancef in the OR within one hour of skin incision and prior to tourniquet inflation. |
| SPECIMENS: | None. |
| HARDWARE: | None. |

**INDICATIONS:** The patient is a 56-year-old male, who had a right foot crush injury by a Jersey barrier resulting in multiple surgeries including first, second, and third toe amputations, skin grafting, subtalar fusion, revision of subtalar fusion, not that he has become more active on the foot, he has had skin breakdown over the site of the dorsolateral first metatarsal amputation, where there is a thin skin in the skin graft. The area is tender and the patient is not tolerating regular shoe wear even with multiple accomodation of padding. The patient was therefore indicated for debridement of the osteophytes. Risks, benefits, and alternatives were thoroughly discussed. All questions were answered and the consent for surgery was signed without hesitation. I met the patient in the preoperative holding area. The plan was re-discussed and I signed the extremity.

**DESCRIPTION OF PROCEDURE:** The patient was brought into the OR and placed supine on the operating room table with the right lower extremity prepped and draped in a standard surgical fashion. The appropriate x-rays were displayed and a time-out was performed. The limb was exsanguinated to the level of the ankle, where the ankle Esmarch was left intact to the ankle. A 3 cm incision was then made in the well perfused and fatty plantar medial fat pad at the distal aspect of the foot through skin with a #15 blade, subcutaneous tissue with a #15 blade cauterizing vascular structures as encountered down to bone. A thick flap of skin and soft tissue were then elevated off the bone being careful not to puncture the skin. The two osteophytes were easily identified and removed with a rongeur, smoothed with a bur and a bone rasp. The tourniquet was let down. The wound was thoroughly irrigated. Hemostasis was obtained. Vertical mattress 2-0 nylon sutures were used to close the wound and a running 3-0 Monocryl was used to

PAGE 1 of 2

Connecticut Surgery Center • 81 Gillett St., Hartford, CT 06105 • Tel: (860) 247-5555 • Fax: (860) 249-5860

## CONNECTICUT SURGERY CENTER
an affiliate of SCA

### OPERATIVE REPORT

PATIENT NAME: JONES, TIMOTHY            MEDICAL RECORD #: 76514

PHYSICIAN: CHRISTINA KABBASH, M.D.       DATE OF SURGERY: 08/27/2013

close the skin. There were no complications. I was present and scrubbed for the entire procedure. The instruments, sponge, and needle counts were appropriate at the end of the procedure.

ADDENDUM: The patient will be weightbearing as tolerated in heel wedge postoperative shoe. He was in pain in the recovery room. He was written for 30 Percocet. These were not be refilled if he runs up. He is seeing his chronic pain management doctor in one week.

*[signature]*

Christina Kabbash, M.D.

JOB#: 486700
CK: med: cnr/prd
DD: 08/27/2013
DT: 08/28/2013

PAGE 2 of 2

Connecticut Surgery Center • 81 Gillett St., Hartford, CT 06105 • Tel: (860) 247-5555 • Fax: (860) 249-5860